I. W. WOODS, doing business as Midwestern Venetian Blind Company, Plaintiff in Error,

v.

Bernie LEVINE, Defendant in Error.
No. 37272.

Supreme Court of Oklahoma.
April 9, 1957.
Rehearing Denied May 14, 1957.

Hardy & Hardy, Tulsa, for plaintiff in error.

S. H. Minsky, Milsten, Milsten & Morehead, Gerald D. Swanson, Tulsa, for defendant in error.

CORN, Justice.

This action was filed by I. W. Woods, doing business as Midwestern Venetian Blind Company, hereinafter called plaintiff, to foreclose a lien for $280.14 on real property for material sold to Bernie Levine, defendant. Judgment was for the defendant and plaintiff appeals. The action was filed against Bernie Levine and Bob Vest, but since it sought to foreclose a materialmen's lien against the defendant Levine only the court treated the action as an action to foreclose against Levine only and rendered judgment accordingly. No disposition is made as to the other defendant Bob Vest who was not served with summons.

It is not disputed that the material was furnished to Vest, a tenant of defendant Levine. The property was a two story frame building, the lower portion of which was used as a restaurant and a small space for an office of the Home Investment Company operated by Vest. Vest purchased and had installed in the premises $148.07 worth of linoleum and $132.07 worth of tile. Defendant testified that he never authorized Vest to purchase the material.

Plaintiff in the appeal has presented eight specifications of error in three general propositions. It is first argued that since defendant retained the property in the building he is bound to pay therefor. Plaintiff cites, among other cases, Crookum v. Ketchum, 174 Okl. 468, 50 P.2d 710, and Wherry v. Luckey, 99 Okl. 239, 226 P. 588. In Crookum v. Ketchum, supra, the property was used on the homestead of the wife after being purchased by the husband and the court found the evidence was sufficient to support the finding that it was done at the direction of and for the benefit of the wife. In Wherry v. Luckey, supra, the case was reversed for failure to instruct that the defendant was bound by accepting the benefits of a contract made by his son

and the evidence discloses that the son was building a house on the land of the father with full consent of the father. The other cases can likewise be distinguished.

Defendant testified that he refused to consent to the repairs. He also testified that he notified plaintiff that he did not want the work done and that Vest was not trustworthy. The court must have believed defendant although the testimony is in conflict. Plaintiff admitted that defendant never talked to him or his manager about payment for repairs until after the work was completed.

■ Plaintiff also argued that the trial court erred in excluding evidence of similar liens on property owned by the defendant. The circumstances under which the offer of proof was made is as follows:

"Q. You do have other rental property? A. Yes, sir.

"Q. And haven't you authorized a tenant in those properties to make repairs?

"Mr. Milsten: I have no objection, but that is not an issue here. I don't believe that is *revelant* to this particular thing. The question is whether or not this was authorized. Suppose he did authorize somebody else, I can't conceive of how it would be relevant. A. I would like to answer if I may.

"The Court: Are you objecting?

"Mr. Milsten: I am objecting—I think we are needlessly burdening the issues. A. I would like to answer.

"The Court: Well, overruled. A. Would you state that again, please?

"Mr. Hardy: Would you read it to him? (reading) A. Never, never.

"Q. Do you know Dr * * *? A. And how.

"Q. Was he one of your tenants? A. Yes, siree, to the tune of about twelve or fifteen hundred dollars.

"Q. Also on rent? A. No, wait a minute. Let me tell you what happened. This * * *—do you want me to explain it?

"Mr. Milsten: If the Court please, I have no objection, but I don't know what the relevancy would be, he says no— A. He is a bigger crook than Vest.

"Mr. Milsten: Now, don't —lets not make any statement— A. I am sorry.

"Mr. Milsten: I don't think it is within the issues or—

"The Court: Objection sustained.

"Mr. Hardy: Exception. We offer to show, if we had been permitted to examine the witness, we would have inquired concerning a lien filed against Bernie Levine and another at 1442 North Lewis by the McMichael Concrete Company, lien No. 30072, filed on 10–15–53, also in the B. F. Jacobs Subdivision, in the amount of $34.60, and another lien was filed on February 2, 1954, by S. W. Willsey against B. Levine, also in B. F. Jacobs Subdivision in the amount of $273.82. We would have inquired whether or not this is also rental property, and whether or not he has not as a matter of fact— A. Never, never, never.

"The Court: Do you object to the offer?

"Mr. Milsten: I do think it is objectionable.

"The Court: Sustained. A. I would like to explain those things, if I could.

"The Court: No, the court doesn't consider it admissible evidence.

"Mr. Hardy: Exception."

The offer was properly refused.

■ Finally it is argued that the court abused its discretion in allowing $200 attorneys' fee. It was stipulated that the court could fix a reasonable fee to the successful party without any testimony being offered in support of a reasonable fee. There is no evidence in the record as to why $200 constituted a reasonable fee on defending an action involving foreclosure of a lien for $280.14. We think under the record in this case and considering the

amount involved that $100 would be a reasonable fee, and we fix the attorney fee at that amount.

The judgment as modified is affirmed.

WELCH, C. J., and DAVISON, JOHNSON, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.